IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | 1:19-CR-91 |
| | ) | |
| STEVIE HAMRICK, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION AND ORDER REDUCING SENTENCE**

Catherine C. Eagles, District Judge.

Stevie Hamrick, a federal prisoner in custody at FCI Butner, has filed a renewed motion for compassionate release pursuant to 18 U.S.C. § 3582(c) asking the Court to reduce his sentence. He contends that he is at a heightened risk of serious illness due to COVID-19 because of his health and age. The motion will be granted.

### BACKGROUND

On August 26, 2019, Mr. Hamrick pled guilty to felon in possession of a firearm and to maintaining a residence for the purpose of manufacturing, distributing, and using controlled substances. Minute Entry 08/26/2019; Doc. 35. Mr. Hamrick was sentenced to 84 months of imprisonment on each count, to run concurrently, followed by two years of supervised release. Minute Entry 09/16/2019; Doc. 39 at 2–3.

Mr. Hamrick filed a motion for compassionate release on April 27, 2020. Doc. 41. The Court denied Mr. Hamrick's motion without prejudice for failure to satisfy the statutory exhaustion requirement in § 3582(c)(1)(A). Doc. 57.

The defendant has now filed a renewed motion for compassionate release, Doc. 58, and briefing is complete. *See* Text Order 07/20/2020; Doc. 59; Doc. 61. The Court has also considered the supplemental report from the United States Probation Office. *See* Text Order 07/24/2020; Doc. 60. The matter is now ripe for decision.

## ANALYSIS

Courts do not have unfettered jurisdiction or discretion to modify criminal sentences. *United States v. Goodwyn*, 596 F.3d 233, 235–36 (4th Cir. 2010). A court may modify a sentence only when a provision in the Federal Rules of Criminal Procedure or a statute expressly permit it to do so. *See* 18 U.S.C. § 3582(c).

Section 3582(c)(1)(A), commonly called the "compassionate release" provision, is one such statutory provision. In order for a sentence reduction under § 3582(c)(1)(A) to be appropriate, the statute requires by its terms that the movant has exhausted his administrative remedies, that extraordinary and compelling reasons exist for a sentence reduction, and that the reduction is consistent with applicable Policy Statements issued by the Sentencing Commission. *See United States v. Redd*, No. 1:97-cr-00006-AJT, 2020 WL 1248493, at *4 (E.D. Va. Mar. 16, 2020). In addition, the Court must consider the relevant § 3553(a) factors. *Id.*

### A. Exhaustion

Mr. Hamrick filed his initial request for compassionate release with his warden on April 16, 2020. Doc. 41 at 11. On April 17, 2020, the warden denied his request. *Id.* at 13. He filed a second request with the warden on July 7, 2020. Doc. 55. As discussed in the Court's Order denying Mr. Hamrick's first motion, *United States v. Hamrick*, No.

1:19-CR-91, 2020 WL 4016037 (M.D.N.C. July 16, 2020), Mr. Hamrick's first request to the warden raised similar grounds for relief as his initial motion for compassionate release, and that is also true of his renewed motion. As more than 30 days have passed since Mr. Hamrick's initial request to the warden, he has satisfied the statutory exhaustion requirement. *See United States v. Davis*, No. 1:17-CR-69, 2020 WL 3976970, at *3 (M.D.N.C. July 14, 2020).

### B. Extraordinary and Compelling Reasons

Mr. Hamrick is 69 years old. Doc. 36 at 3. He has hypertension, hypoxemia, COPD, and severe emphysema. *See* Doc. 50; Doc. 59-1. Under current CDC guidelines, COPD puts him at increased risk from severe illness from COVID-19 and his hypertension and emphysema "might" put him at an increased risk. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last accessed 08/05/2020). Additionally, the CDC currently believes that "the risk for severe illness from COVID-19 increases with age." *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last accessed 08/05/2020).

While his initial motion was pending, Mr. Hamrick tested positive for COVID-19 on June 10, 2020. *See* Doc. 47; Doc. 50 at 1. He was hospitalized at Duke University Medical Center, where he was treated; he was returned to FCI Butner on June 22, 2020. *See* Doc. 50 at 1. Upon return to FCI Butner, he was placed in quarantine for 14 days. *Id.*; Doc. 59-1. He has since been returned to the general population. Doc. 59-1 at 5.

3

Mr. Hamrick's medical condition was serious before he contracted COVID-19, *see generally* Doc. 50, and his health has worsened following his bout with COVID-19. *See* Doc. 59-1. Despite increased use of supplemental oxygen, he has difficulty maintaining adequate oxygen saturation. *See* Docs. 50, 59-1. His breathing was so labored at one medical appointment that he could not say more than a few words without stopping for breath. Doc. 59-1 at 7. Moving from his bed to the bathroom increases his breathing difficulties. *Id.* He has already had to return to the emergency room for acute exacerbation of his COPD. *Id.* at 5, 9. He also requires assistance for walking. *See, e.g.*, *Id.* at 1 (reflecting defendant "was walked by nursing"); at 7 (reflecting defendant was "in wheelchair"), at 24 (reflecting defendant was "walked to urgent care").

Mr. Hamrick is confined at FCI Butner. FCI Butner has alarming rates of COVID-19 infections. *See* https://www.bop.gov/coronavirus/ (last accessed 08/05/2020 and reporting 89 active inmate cases and 9 active staff cases). This is a new disease, and the state of scientific knowledge is incomplete; it is not known whether someone who has had COVID-19 is immune and, if he is, how long any such immunity lasts.

Based on these facts, the Court finds that Mr. Hamrick's medical conditions combined with the threat from COVID-19 constitute extraordinary and compelling reasons warranting a sentence reduction. In sum, he has very serious health issues; he cannot consistently walk alone, *see* U.S.S.G. § 1B1.13 app. note 1 (noting relevance of inability to care for oneself); he is at high risk of serious health complications from his existing conditions; he is back in the general population in a prison unit where there are many cases of COVID 19; and should he contract COVID-19 again, the consequences

4

could well be fatal.  While it appears he has received daily medical attention since his release from the hospital, *see* Doc. 59-1, he is continuing to experience problems breathing and has already had to go the emergency room.

### C.  3553(a) Factors

The existence of extraordinary and compelling reasons is not enough, by itself, to support a sentence reduction.  Courts must still consider whether a sentence reduction is appropriate in light of applicable sentencing factors in § 3553(a).  As is most relevant here, these factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed –
>
>> (A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense
>>
>> (B)  to afford adequate deterrence to criminal conduct;
>>
>> (C)  to protect the public from further crimes of the defendant; and
>>
>> (D)  to provide the defendant with needed . . . medical care . . .in the most effective manner . . . [and]
>
> (4) the kinds of sentence and the sentencing range established for [the applicable offense category as set forth in the guidelines];

18 U.S.C. § 3553(a).

The nature of Mr. Hamrick's underlying offense is serious.  He possessed crack cocaine, cocaine hydrochloride, marijuana, and small numbers of various prescription medications, along with paraphernalia indicating he was converting cocaine hydrochloride into crack cocaine.  *See* Doc. 36 at ¶¶ 17–19.  He had a significant amount

of cash, *id.* at ¶ 19, which was not explained by his employment, *see id.* at ¶ 112, and there were numerous indicators that he was selling illegal drugs. *Id.* at ¶ 18. He also had a loaded firearm and more ammunition in his bedroom. *Id.* at ¶ 17.

As to his history and characteristics, Mr. Hamrick has a lengthy criminal history spanning over 30 years, including several drug-related crimes. He has no history of violence and no convictions for violent crimes. *See* Doc. 36 at ¶¶ 38–91. The remainder of his crimes were primarily misdemeanor traffic offenses. *Id.* Before his present sentence, the longest active sentence he had served was for 7 months in 1990. *Id.* at ¶ 39. He had been unsuccessful on state probation many times. *Id.* at ¶¶ 45, 59, 61, 63, 76, 82, 84, 90.

Despite this criminal record, Mr. Hamrick has an extensive legitimate work history. His father taught him to work on cars, and from 1973 to 1992 he worked as an auto mechanic for trucking companies. Doc. 36 at ¶¶ 113–15. He then opened his own mechanic shop and was self-employed from 1992 until his arrest. *Id.* at ¶ 112.

Ordinarily, Mr. Hamrick's age and health would indicate a low probability of recidivism. *See United States v. Howard*, 773 F.3d 519, 533 (4th Cir. 2014) ("[T]he risk of recidivism is inversely related to an inmate's age."). That is not certain in this case as Mr. Hamrick committed the underlying offenses just two years ago when he was 67 years old, and he also suffered from COPD at the time. Doc. 36 ¶¶ 105–106. Additionally, while on pretrial release in this case, Mr. Hamrick tested positive for cocaine twice and was charged in state court with driving while license revoked, hit and run, and failure to

6

maintain lane of traffic. *Id.* at ¶¶ 6–13. His addiction to drugs is long-standing. *Id.* at ¶¶ 108–109.

The need for the sentence to provide the defendant with medical care in the most effective manner is an appropriate factor to take into account. 18 U.S.C. § 3553(a)(2)(D). While it appears the BoP has provided adequate medical care for Mr. Hamrick since his COVID-19 diagnosis, the high number of COVID-19 cases in Butner prompts serious concern. The infection rate reflects the limitations of containing the pandemic in a correctional setting and it raises concerns over whether the institution has the ongoing resources needed to provide appropriate treatment for persons with serious ongoing health issues like Mr. Hamrick while at the same time managing many patients who have contracted or are suspected of having contracted COVID-19. Mr. Hamrick already contracted COVID-19 once while in BoP custody and continued incarceration at FCI Butner exposes him to additional risks.

Upon release, Mr. Hamrick hopes to live at the AYA House, "a church based drug treatment and community re-entry therapeutic facility" in Kannapolis. Doc. 51 at 6. AYA House is a fee-based recovery and rehabilitation program that provides housing and support for up to six clients at a time. Doc. 60 at 1. AYA House imposes special requirements on all residents on community supervision, like Mr. Hamrick would be, including drug testing, drug treatment, restricted movement for up to 60 days, curfews, and others. *Id.* at 1–2. Mr. Hamrick would have to be interviewed and accepted before he could live at AYA House, *id.,* but it appears he is eligible. If accepted, he would be assessed for the types of services he needs and what duties he could perform. *Id.* at 1.

7

Mr. Hamrick's offense was serious, and his sentence should reflect this seriousness, promote respect for the law, provide just punishment, and afford adequate deterrence.  *See* 18 U.S.C. § 3553(a)(2).  His sentencing guideline range was 92 to 115 months, driven primarily by his criminal record, and the Court varied downwards because Mr. Hamrick had never served a lengthy sentence and he pled guilty twice.  Doc. 40 at 1, 3.[1]  Mr. Hamrick has served barely two years on his 7-year sentence.  Still, this represents the longest period of incarceration he has ever served, *see* Doc. 36 at ¶39, and Mr. Hamrick knows that if he violates his supervised release he is very likely to be arrested, as he was when he violated his pre-trial release, and returned to prison.  Further, in light of his physical deterioration and serious medical developments since incarceration, a return to drug use will have serious implications for his health, which may provide additional motivation to Mr. Hamrick to stay away from drugs.

Mr. Hamrick remains subject to the original conditions of supervised release imposed at sentencing, Doc. 39 at 3–5.  Though recidivism is always a risk, required participation in a residential drug treatment program like AYA House does reduce that risk and, together with the terms previously imposed and ongoing supervision by the probation office, *see id.*, reasonably assures the safety of the community.  *See* 18 U.S.C. § 3142(g).

The Court has weighed all of these factors in combination with Mr. Hamrick's extraordinary and compelling circumstances and concludes in its discretion that a

---

[1] His initial guilty plea was set aside because of the Supreme Court's decision in *Rehaif v. United States*, 139 S. Ct. 2191 (2019).  *See* Doc. 22.

8

Case 1:19-cr-00091-CCE   Document 62   Filed 08/06/20   Page 8 of 10

sentence reduction is consistent with the § 3553(a) factors. Mr. Hamrick's health conditions are severe, and the COVID-19 pandemic at FCI Butner is extensive. Mr. Hamrick is 69 years old, unable to walk unassisted, and has trouble breathing even with the assistance of supplemental oxygen. He has already contracted COVID-19 while in prison and has required outside emergency care on at least one occasion since his recovery. While he has not served a long portion of his sentence, it is his longest period of incarceration and he served most of it while battling his chronic illnesses and COVID-19. His offenses were serious, but in light of his health, age, the pandemic, and lack of violent history, his original sentence no longer reflects a just punishment. His "sentence has been significantly more laborious than that served by most inmates . . . and further incarceration in his condition would be greater than necessary to serve the purposes of punishment set forth in § 3553(a)(2)." *United States v. Beck*, 425 F. Supp. 3d 573, 586 (M.D.N.C. 2019) (quotation and citation omitted). Time served, plus the limitations imposed by the terms of his supervised release, is an appropriate sentence.

It is **ORDERED and ADJUDGED** that:

1. The defendant's motion for compassionate release, Doc. 58, is **GRANTED**.
2. The defendant's sentence is **REDUCED** to time served, followed by supervised release for two years on the same terms previously imposed and the following additional conditions:
    a. Mr. Hamrick shall apply to live at AYA House in Kannapolis, North Carolina, and upon acceptance shall cooperatively participate in the residential substance abuse recovery program at AYA House or other

similar program approved by the Probation Office and shall abide by all the rules and conditions of the program including drug testing, curfew, or any other conditions.

b. Mr. Hamrick shall provide releases of information to both the United States Probation Office and AYA House so that the probation officer and AYA House staff may work collaboratively to monitor Mr. Hamrick's overall progress and treatment compliance.

c. Upon successful completion of the residential program, Mr. Hamrick may only live at a place and with persons approved in advance by the probation officer to ensure that he is not living with persons who may still be involved with illegal drugs.

3. This Order is stayed for 14 days to give BoP time to implement it, to give the AYA House time to interview and assess Mr. Hamrick, and to give the Probation Office time to plan for Mr. Hamrick's release.

4. The Clerk shall provide a copy of this Order to the Probation Office.

This the 6th day of August, 2020.

UNITED STATES DISTRICT JUDGE